Docket No. 87309–Agenda 14–January 2000.

MOIRA McDONNELL, Ex’r of the Estate of John G. McDonnell, Deceased, Appellant, v. RICHARD F. McPARTLIN III, M.D., 
et al.
, Appellees.

Opinion filed June 15, 2000.

JUSTICE BILANDIC delivered the opinion of the court:

The principal issue in this appeal is whether a defendant in a medical negligence case who asserts that a nonparty physician’s conduct was the sole proximate cause of the plaintiff’s injury (the so-called “empty chair” defense) must demonstrate that the nonparty physician’s conduct was professionally negligent, as well as the sole proximate cause of the plaintiff’s injury, in order for the jury to be instructed on sole proximate cause (see Illinois Pattern Jury Instructions, Civil, No. 12.04 (3d ed. 1995) (hereinafter IPI Civil 3d)). We hold that such a defendant is not required to demonstrate that the nonparty physician’s conduct was professionally negligent in order for the jury to be instructed on sole proximate cause.

BACKGROUND

On Saturday, November 8, 1986, Moira McDonnell (plaintiff) brought her husband, John McDonnell (McDonnell), to the emergency room of Good Samaritan Hospital. McDonnell, a diabetic, had become ill the previous evening. The couple went to the emergency room at the direction of Dr. Barbara Loeb, with whom plaintiff had spoken that morning. Dr. Loeb was covering for Dr. Richard McPartlin III, McDonnell’s regular internist. Dr. McPartlin became McDonnell’s primary care physician in April 1986, following a surgery in which McDonnell’s right hip was replaced for the third time. This surgery was performed at Good Samaritan Hospital by Dr. James Ahstrom, an orthopedic surgeon.

Dr. Thomas Mullin, Jr., was on duty in the emergency room on November 8, and examined McDonnell. Dr. Mullin ordered certain blood tests and an X-ray of McDonnell’s right hip. Dr. Mullin believed that McDonnell was suffering from a flu virus. After Dr. Mullin discussed McDonnell’s condition with Dr. Loeb by telephone, Dr. Loeb decided not to admit McDonnell to the hospital.

Based on McDonnell’s blood glucose levels which the couple reported to Dr. Loeb the next day, November 9, Dr. Loeb suggested that McDonnell return to the emergency room that day for an accurate blood glucose reading and further evaluation. McDonnell returned to the emergency room on Monday, November 10, when Dr. McPartlin was back. Dr. McPartlin’s initial impression was that McDonnell was suffering from a diabetic condition known as ketoacidosis, possibly secondary to a right hip infection. Dr. McPartlin admitted McDonnell to the intensive care unit.

On the afternoon of November 11, Dr. McPartlin started McDonnell on antibiotics and ordered an orthopedic consult with Dr. Ahstrom. In the early morning hours of November 12, McDonnell went into septic shock, and later suffered a cardiac/respiratory arrest. Dr. Michael Orth, an orthopedic surgeon who was covering for Dr. Ahstrom while Dr. Ahstrom was out of town, performed an incision and drainage of McDonnell’s right hip, which was infected.

Dr. McPartlin determined, as did Dr. Orth and other consulting specialists, that McDonnell’s right hip prosthesis must be removed as soon as McDonnell was medically cleared for surgery. Dr. Ahstrom, who returned to the hospital on November 16, believed that it was not necessary to remove the hip prosthesis, and that McDonnell could not survive such a surgery. Dr. Ahstrom advised plaintiff and McDonnell against surgery; they followed Dr. Ahstrom’s advice.

In early December 1986, while Dr. Ahstrom was out of town, Dr. E. Thomas Marquadt, an orthopedic surgeon, consulted on the case. Dr. Marquadt concluded that McDonnell’s life-threatening condition required removal of the right hip prosthesis. On December 8, McDonnell was transferred to Rush-Presbyterian St. Luke’s Medical Center (Rush), where he underwent surgery later that month for removal of the hip. McDonnell remained at Rush until his death on February 16, 1987. The cause of death was heart failure due to sepsis and a bone infection.

Plaintiff, as executrix of her husband’s estate, subsequently filed a wrongful death and survival action in the circuit court of Cook County against Drs. Mullin and McPartlin, and their corporate employers. Plaintiff claimed, 
inter alia
, that defendants’ medical negligence in failing to diagnose and treat her husband’s hip infection resulted in his death. Defendants denied any liability and argued, 
inter alia
, that the conduct of Dr. Ahstrom, a nonparty, was the sole proximate cause of McDonnell’s death. A jury found in favor of defendants. The circuit court entered judgment on the jury verdict and later denied plaintiff’s post-trial motions. The appellate court affirmed. 303 Ill. App. 3d 391. We granted plaintiff’s petition for leave to appeal (see 177 Ill. 2d R. 315), and now affirm the judgment of the appellate court.

ANALYSIS

Plaintiff argues that the jury should not have been instructed as to defendants’ sole proximate cause defense, in the absence of competent evidence that Dr. Ahstrom was professionally negligent, as well as the sole proximate cause of McDonnell’s death. Plaintiff claims that the improper jury instruction, coupled with defendants’ improper argument, resulted in undue prejudice to her, warranting a new trial. Plaintiff argues, in the alternative, that she is entitled to a new trial because defendants used their peremptory challenges to exclude black members of the venire, and because various evidentiary errors deprived her of a fair trial.

I. Sole Proximate Cause Defense

We consider first whether the jury was properly instructed as to defendants’ theory that the conduct of Dr. Ahstrom was the sole proximate cause of McDonnell’s death. Over plaintiff’s objection, the jury was instructed pursuant to the long version of IPI Civil 3d No. 12.04. This instruction states in its entirety:

“12.04 Concurrent Negligence Other Than Defendant’s

More than one person may be to blame for causing an injury. If you decide that a [the] defendant[s] was [were] negligent and that his [their] negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame.

[However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant
.
]”

Plaintiff argues that the appellate court wrongly held that the sole proximate cause instruction may be given to the jury in a medical malpractice case “even though no expert testifies the ‘conduct’ of the third person nonparty was professionally negligent.” 303 Ill. App. 3d at 398. Plaintiff maintains that the sole proximate cause instruction requires a defendant to establish, through expert testimony, that the nonparty’s conduct was professionally negligent, as well as the sole proximate cause of the claimed injury, and that defendants here failed to present sufficient evidence to justify the instruction in this case.

In support of her argument, plaintiff cites to 
Freeman v. Petroff
, 275 Ill. App. 3d 904 (1995) (
Freeman I
), 
Banks v. Climaco
, 283 Ill. App. 3d 842 (1996), and 
Freeman v. Petroff
, 288 Ill. App. 3d 145 (1997) (
Freeman II
). In 
Freeman I
, plaintiffs brought a medical negligence action against the obstetrician who delivered their daughter, seeking recovery for permanent injuries the infant suffered in connection with her premature birth. The defendant alleged that the hospital, a nonparty to the suit, was the sole proximate cause of the child’s injuries. The trial court instructed the jury based on the long form of IPI Civil 3d No. 12.04. The jury returned a verdict in favor of the obstetrician.

The appellate court reversed and remanded for a new trial. The appellate court initially observed that, “where the conduct of a nonparty is presented as a defense, the third person’s conduct must be both negligent and the proximate cause of the plaintiff’s injury in order to give the second paragraph of IPI Civil 3d No. 12.04.” 
Freeman I
, 275 Ill. App. 3d at 909. The appellate court went on to hold that the defendant must establish, through expert testimony, the generally accepted standard of care for the particular situation, a deviation from that standard, and a causal connection between the third party’s deviation and plaintiff’s injury. 
Freeman I
, 275 Ill. App. 3d at 909-11. Because the evidentiary record in 
Freeman I
 revealed no testimony establishing, 
inter alia
, the standard of care applicable to the nonparty hospital, the appellate court found that the trial court erred in giving the sole proximate cause instruction, and that such error deprived the plaintiffs of a fair trial.

The defendants in 
Freeman I
 filed a petition for leave to appeal to this court. We denied the petition, but entered a supervisory order remanding the matter to the appellate court for further consideration in light of 
Leonardi v. Loyola University
, 168 Ill. 2d 83 (1995). 
Freeman v. Petroff
, 165 Ill. 2d 550 (1996). In 
Leonardi
, which we discuss more fully below, we held, in the context of a medical negligence case, that an answer which denies that an injury was the result of or caused by the defendant’s conduct is sufficient to permit the defendant to raise the sole proximate cause defense. 
Leonardi
, 168 Ill. 2d at 92-94. Following remand of 
Freeman I
, the appellate court issued 
Freeman II
. In 
Freeman II
, the appellate court distinguished 
Leonardi
 and affirmed the holding in 
Freeman I
. 
Freeman II
, 288 Ill. App. 3d at 146. Significantly, the appellate court in this case declined to follow 
Freeman II
.

The 
Banks 
case, on which plaintiff also relies, distinguished 
Leonardi
 and held that the standard applicable to a plaintiff for proving medical negligence also applies to the defendant, where the defendant argues that someone or something other than the defendant is the sole proximate cause of the plaintiff’s injury. 
Banks
, 283 Ill. App. 3d at 851-52.

Freeman I
, 
Freeman II
, and 
Banks
, on the one hand, and the appellate court opinion in this case, on the other hand, present conflicting and irreconcilable statements of Illinois law. We now resolve this conflict. For the reasons stated below, we hold that, in the context of a medical negligence case, the sole proximate cause instruction requires only that the defendant present some evidence that the nondefendant is the sole proximate cause of the plaintiff’s injury. It is not necessary that the defendant also establish that the nondefendant’s conduct was medically negligent. Accordingly, as to this issue, we affirm the decision of the appellate court in this case. Further, to the extent 
Freeman I
, 
Freeman II
, and 
Banks
 conflict with our holding today, they are overruled.

A defendant raising the sole proximate cause defense seeks to defeat a plaintiff’s claim of negligence by establishing proximate cause solely in the act of another not a party to the suit. Accordingly, this defense is aptly referred to as the “empty chair” defense. 
Leonardi
, 168 Ill. 2d at 92.

The issue of whether the sole proximate cause instruction was properly given or refused in a particular case has frequently arisen where the defendant has implicitly, if not expressly, claimed that the nonparty was both negligent and the sole proximate cause of the plaintiff’s injury. See, 
e.g.
, 
Ballweg v. City of Springfield
, 130 Ill. App. 3d 241, 248-49 (1984), 
aff’d in part & rev’d in part
, 114 Ill. 2d 107 (1986) (where the defendant boat manufacturer argued that the sole proximate cause of the boaters’ deaths was the conduct of the person piloting the boat when it struck the overhead power lines, and the conduct of the city, which maintained the power lines in a dangerous condition); 
Storm v. Brown
, 15 Ill. App. 3d 29, 32-33 (1973) (where the defendant argued that the sole proximate cause of a vehicular accident was the negligent conduct of a nonparty driver); 
French v. City of Springfield
, 5 Ill. App. 3d 368, 371-76 (1972) (where the defendant municipality sought to introduce evidence that the driver of the vehicle in which the plaintiff was injured was intoxicated at the time of the accident and was the sole proximate cause of the plaintiff’s injury); 
Miyatovich v. Chicago Transit Authority
, 112 Ill. App. 2d 437, 441 (1969) (where the defendant transit authority claimed that liability for the accident rested solely with the driver of the vehicle in which the plaintiff was a passenger inasmuch as that driver went through a red light). Nevertheless, that Illinois courts have often considered the propriety of the sole proximate cause instruction in cases where the defendant sought to establish the nonparty’s negligence does not mean that the instruction 
requires
 a defendant to establish such negligence. Indeed, the language of the instruction contains no such requirement.

The instruction as to sole proximate cause, set forth in the second paragraph of IPI Civil 3d No. 12.04, instructs the jury that “if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant.” IPI Civil 3d No. 12.04. The instruction clearly refers only to the “
conduct
 of some person other than the defendant” (emphasis added), not the 
negligent conduct
 of some person other than the defendant. The “Notes on Use” accompanying the instruction similarly explain that “[t]he second paragraph should be used only where there is evidence tending to show that the sole proximate cause of the occurrence was the 
conduct
 of a third person” (emphasis added), not the 
negligent conduct
 of a third person. Thus, the sole proximate cause instruction contains no express requirement that the jury consider whether the third person’s conduct was negligent. The sole proximate cause instruction likewise contains no implicit requirement that the jury consider whether the third person’s conduct was negligent. We note that the first paragraph of IPI Civil 3d No. 12.04 implicitly refers to the third person’s negligence by referring to the third person’s “blame.” The second paragraph of the instruction, however, contains no similar reference.

Plaintiff places much emphasis on the title of the instruction–“Concurrent Negligence Other Than Defendant’s.” The title, of course, is not a part of the instruction that a jury receives. In any event, the title appropriately describes the main provision of the instruction contained in the first paragraph, rather than the optional provision contained in the second, bracketed paragraph, which pertains to sole proximate cause.

Significantly, plaintiff’s reading of the sole proximate cause instruction conflicts with the definition of “proximate cause” set forth in IPI Civil 3d No. 15.01. Pursuant to this instruction, proximate cause means:

“[that] [a] [any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]” IPI Civil 3d No. 15.01.

This instruction does not define proximate cause as only a “negligent cause.” Rather, proximate cause is “that cause,” “a cause,” or “any cause” which produced the plaintiff’s injury.

Based on the plain language of IPI Civil 3d No. 12.04 and consistent with the instructional definition of proximate cause, we conclude that the sole proximate cause instruction does not require that a defendant demonstrate that the third person’s conduct was negligent, in addition to being the sole proximate cause of plaintiff’s claimed injury.

Plaintiff argues that if the second paragraph of IPI Civil 3d No. 12.04 is intended to address the nonnegligent intervention of third persons, then IPI Civil 3d No. 12.05 is meaningless. We disagree. IPI Civil 3d No. 12.05 states in its entirety:

“12.05 Negligence–Intervention of Outside Agency

If you decide that a [the] defendant[s] was [were] negligent and that his [their] negligence was a proximate cause of injury to the plaintiff, it is not a defense that something else may also have been a cause of the injury.

[However, if you decide that the sole proximate cause of injury to the plaintiff was something other than the conduct of the defendant, then your verdict should be for the defendant.]” IPI Civil 3d No. 12.05.

The second paragraph of IPI Civil 3d No. 12.04 applies where there is evidence that 
someone
 other than the defendant is the sole proximate cause of the plaintiff’s injury. In contrast, the second paragraph of IPI Civil 3d No. 12.05 applies where there is evidence that 
something
 other than the defendant’s conduct is the sole proximate cause of the plaintiff’s injury. Thus, our reading of the sole proximate cause instruction does not render moot IPI Civil 3d No. 12.05.

Our decision in 
Leonardi
 also supports our conclusion that IPI Civil 3d No. 12.04 does not require a defendant to prove that the nonparty’s conduct was both negligent and the sole proximate cause of the plaintiff’s injury. In 
Leonardi
, the plaintiffs brought a medical malpractice action against Loyola University and other defendants for fatal injuries suffered by Michela Lopez during and subsequent to childbirth. Lopez’s attending physician, Dr. Thomas Tierney, died prior to trial and the plaintiffs settled with his estate. The remaining defendants denied any liability and argued that Dr. Tierney was the sole proximate cause of the plaintiffs’ injuries. A jury returned a verdict in favor of the defendants, and the trial court entered judgment thereon. The appellate court affirmed. 
Leonardi v. Loyola University
, 262 Ill. App. 3d 411 (1993).

On appeal to this court, the plaintiffs argued, in relevant part, that the trial court erred by allowing the defendants to present evidence of Dr. Tierney’s conduct, and by tendering to the jury an instruction on sole proximate cause pursuant to the long version of IPI Civil 3d No. 12.04. We rejected the plaintiffs’ arguments.

We held, in 
Leonardi
, that it is not necessary for a defendant to plead sole proximate cause as an affirmative defense. Rather, a defendant’s general denial of liability is sufficient to permit the defendant to raise the sole proximate cause defense and present evidence that the claimed injury was the result of another cause. 
Leonardi
, 168 Ill. 2d at 93-94. We explained:

“In any negligence action, the plaintiff bears the burden of proving not only duty and breach of duty, but also that defendant proximately caused plaintiff’s injury. [Citation.] The element of proximate cause is an element of the 
plaintiff’s
 case. The defendant is not required to plead lack of proximate cause as an affirmative defense. [Citation.] Obviously, if there is evidence that negates causation, a defendant should show it. However, in granting the defendant the privilege of going forward, also called the burden of production, the law in no way shifts to the defendant the burden of proof. [Citations.]

***

*** The sole proximate cause defense merely focuses the attention of a properly instructed jury *** on the plaintiff’s duty to prove that the defendant’s conduct was a proximate cause of plaintiff’s injury.” (Emphasis in original.) 
Leonardi
, 168 Ill. 2d at 93-94.

In 
Leonardi
, we also rejected the plaintiffs’ contention that the trial court erred by instructing the jury pursuant to the long form of IPI Civil 3d No. 12.04. We recognized a defendant’s right not only to rebut evidence tending to show that the defendant’s acts are negligent and the proximate cause of the claimed injuries, but also to endeavor to establish that the conduct of a third person, or some other causative factor, is the sole proximate cause of the plaintiff’s injuries and, assuming some competent evidence is presented, to have the jury instructed on this theory. 
Leonardi
, 168 Ill. 2d at 101. The second paragraph of IPI Civil 3d No. 12.04 properly reflects the defendant’s right to attempt to negate a single element of the plaintiff’s medical negligence claim, 
i.e.
, the element of proximate cause.

Plaintiff, however, contends that this court’s subsequent decision in 
Holton v. Memorial Hospital
, 176 Ill. 2d 95 (1997), requires that there be evidence that the nonparty physician was professionally negligent before the jury may be instructed on the sole proximate cause defense. We disagree. In 
Holton
, the plaintiffs filed a medical negligence action against Memorial Hospital and other defendants for injuries that Patricia Holton sustained when her medical condition was misdiagnosed and inappropriately treated. The plaintiffs settled with all defendants except the hospital. As to that defendant, the plaintiffs claimed that the hospital’s nursing staff had failed to timely and accurately report Patricia’s symptoms. The trial court entered judgment on the jury verdict in favor of the plaintiffs. The appellate court affirmed, modifying only the amount of the judgment. 
Holton v. Memorial Hospital
, 274 Ill. App. 3d 868 (1995). This court reversed the judgment in favor of the plaintiffs and remanded the cause for a new trial. The principal issue we resolved in 
Holton
 was whether application of the “loss of chance” doctrine in medical malpractice cases lessens the plaintiff’s burden of proving proximate cause. 
Holton
, 176 Ill. 2d at 98. We also considered various trial errors. In particular, we considered the hospital’s claim that the trial court erred in denying the sole proximate cause instruction. We found no error, inasmuch as the hospital never argued or presented evidence that “
only
 the negligence of persons other than the hospital employees,” 
i.e.
, the treating physicians, proximately caused the plaintiffs’ injury. (Emphasis in original.) 
Holton
, 176 Ill. 2d at 134.

As the plaintiff concedes, the issue we address today was not before this court in 
Holton
. Further, our holding in that case was premised on the complete absence of evidence and argument by the hospital that the conduct of the nonparty physicians was the 
only
 proximate cause of the plaintiffs’ injuries. Although we tangentially referred to the nonparty physicians’ negligence, we did not expressly consider, as we do now, whether evidence of such negligence is a necessary predicate to the sole proximate cause instruction. 
Holton
, therefore, is inapposite.

We observe also that negligent conduct and proximate cause are distinct, albeit related, concepts. Given their relationship, there is a pronounced tendency when considering one to include the other. We cannot, however, ignore the truism that every injury need not proceed from a negligent cause. Accordingly, where there is some competent evidence that the sole proximate cause of a plaintiff’s claimed injury lies in the conduct of someone other than the defendant, the defendant is entitled to have the jury instructed pursuant to the second paragraph of IPI Civil 3d No. 12.04, notwithstanding the absence of evidence tending to establish that the third person’s conduct was negligent. That the third person is a physician does not change this result. As the appellate court in this case correctly recognized, “People, doctors included, make judgments that, in hindsight, turn out to be mistaken. Those judgments might not be professionally negligent when made. Yet, injury resulted.” 303 Ill. App. 3d at 397.

IPI Civil 3d No. 12.05 also demonstrates that “proximate cause” is not synonymous with “negligent cause.” As already discussed, this instruction directs a jury to consider whether “something” other than the defendant’s conduct was the sole proximate cause of the plaintiff’s injury. That “something” has, in the past, included a variety of nonnegligent causes. See, 
e.g.
, 
Roach v. Springfield Clinic
, 223 Ill. App. 3d 597, 615 (1991), 
aff’d in part & rev’d in part on other grounds
, 157 Ill. 2d 29 (1993) (condition of the fetus in the womb); 
Schuchman v. Stackable
, 198 Ill. App. 3d 209, 225 (1990) (falling tree top); 
Burge v. Morton
, 99 Ill. App. 3d 266, 268-69 (1981) (penicillin-resistant bacteria); 
Bauer v. J.B. Hunt Transport, Inc.
, 150 F.3d 759, 762 (7th Cir. 1998) (foul weather).

Plaintiff emphasizes the fact that defendants did not simply argue that some blameless conduct was the sole proximate cause of McDonnell’s death; rather, defendants argued, in closing, that Dr. Ahstrom’s negligent conduct was the sole proximate cause. Plaintiff claims there was insufficient evidence to support defendants’ argument and that she was, therefore, unduly prejudiced.

The issue of whether a defendant is entitled to argue to the jury that the nonparty physician was negligent is separate and distinct from the issue of whether a defendant is entitled to have the jury instructed on the defense of sole proximate cause. The sole proximate cause instruction, like any jury instruction, requires that there be some evidence to justify the theory of the instruction. 
Leonardi
, 168 Ill. 2d at 101. As decided above, evidence of the nonparty’s negligence is not required to justify the sole proximate cause instruction.

Whether a defendant may argue that the nonparty physician is negligent is governed by the same principles applicable to other arguments made in closing. The general rule is that a party is “privileged to discuss the evidence introduced and all reasonable inferences that may be drawn therefrom.” 
Forest Preserve District v. Alton R.R. Co.
, 391 Ill. 230, 236 (1945). Only competent evidence, of course, will be considered in determining whether a given argument is proper. See 
Schaffner v. Chicago & North Western Transportation Co.
, 129 Ill. 2d 1, 19-20 (1989).

At trial, defendants introduced evidence from which a jury could conclude that defendants did not deviate from the standard of care from November 8, when McDonnell was first treated in the emergency room, through the afternoon of November 12, when McDonnell was in septic shock and his right hip was incised and drained. As to the period following septic shock, defendants introduced extensive evidence that all of the physicians involved in McDonnell’s care, with the exception of Dr. Ahstrom, were in agreement that antibiotics alone could not cure the infection and that the right hip prosthesis–a foreign object in the body and a breeding ground for bacteria–must be removed. The physicians who were in agreement with Dr. McPartlin on this issue included a cardiologist, a nephrologist, an infectious disease specialist, an orthopedic surgeon, and a general surgeon. Dr. Ahstrom was alone in his belief that nonsurgical intervention was sufficient.

Although there was expert testimony that a good-faith disagreement as to the appropriate medical treatment to give in a particular case may exist without any implication of negligence, based on the testimony of Drs. Orth and Ahstrom, a reasonable inference could be made that this case did not present simply a good-faith disagreement. Dr. Orth, the orthopedic surgeon who cared for McDonnell in Dr. Ahstrom’s absence, testified that an orthopedic surgeon who refuses to recognize that a prosthesis can be the breeding ground for bacteria, and bases treatment decisions on that impliedly faulty premise, deviates from the standard of care. Notably, Dr. Ahstrom’s testimony as to the relationship between a hip prosthesis, bacteria, and infection was equivocal. Defendants could, therefore, reasonably infer and argue that Dr. Ahstrom simply refused to recognize what every other physician involved in McDonnell’s care knew, 
i.e.
, nonsurgical intervention would not cure the infection. Plaintiff’s own internal medicine and infectious disease expert, Dr. Dieter Gump, testified that Dr. Ahstrom erred grievously by not removing the hip sooner, rather than later. According to Dr. Gump, by the time the hip was removed at Rush, McDonnell’s death was a foregone conclusion.

Evidence was also introduced that the infection treated in November 1986 related back to McDonnell’s April 1986 surgery in which Dr. Ahstrom replaced McDonnell’s right hip for the third time. Dr. Marquadt testified that removing the old cement is the most critical part of a subsequent hip replacement surgery, and that the presence of old cement could cause a low-grade infection to develop and smolder. Dr. Ahstrom acknowledged that, during the third hip replacement surgery, he “would almost be willing to bet” that some old cement had been left in McDonnell’s hip.

Based on the foregoing evidence, a reasonable inference could be made that Dr. Ahstrom was professionally negligent, and that such negligence was the sole proximate cause of plaintiff’s claimed injury. Accordingly, defendants were entitled to make this argument to the jury.

II. 
Batson
 Claim

We next examine plaintiff’s claim that defendants exercised their peremptory challenges to exclude black members of the venire, in violation of 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986).

The rule announced in 
Batson
, that the State may not use peremptory challenges to purposefully exclude members of the venire based on their race, applies with equal force to private litigants in civil cases. 
Edmonson v. Leesville Concrete Co.
, 500 U.S. 614, 114 L. Ed. 2d 660, 111 S. Ct. 2077 (1991). The
 Batson
 rule also applies where, as here, the party making the 
Batson
 claim is not the same race as the excluded jurors. 
Powers v. Ohio
, 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991).

Batson
 established a three-step process for evaluating a claim that a party’s peremptory challenges have been exercised in a discriminatory manner. First, the party making the 
Batson
 claim must establish a 
prima facie
 case of purposeful discrimination. If a 
prima facie
 case is made, the burden then shifts to the other party to articulate a race-neutral reason for striking the venirepersons in question. The trial court must then determine whether the party making the 
Batson
 claim has met the burden of establishing purposeful discrimination. 
Batson
, 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89, 106 S. Ct. at 1723-24; 
Hernandez v. New York
, 500 U.S. 352, 358-59, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1865-66 (1991).

Explanations advanced by the party against whom a 
Batson
 claim has been made must be clear and reasonably specific, but need not rise to the level of a challenge for cause. 
Batson
, 476 U.S. at 97-98 & n.20, 90 L. Ed. 2d at 88 & n.20, 106 S. Ct. at 1723-24 & n.20. Indeed, unless a discriminatory intent is inherent in a party’s explanation, the reason offered will be deemed race-neutral. 
Hernandez
, 500 U.S. at 360, 114 L. Ed. 2d at 406, 111 S. Ct. at 1866. Mere assertions, however, of nondiscriminatory motive for exercising a peremptory challenge are insufficient to rebut a 
prima facie
 case. 
Batson
, 476 U.S. at 97-98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723-24.

Where a trial court rules on the ultimate question of purposeful discrimination, the preliminary issue of whether a 
prima facie
 showing has been made becomes moot. 
Hernandez
, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866; 
People v. Hudson
, 157 Ill. 2d 401, 427-28 (1993); 
People v. Mitchell
, 152 Ill. 2d 274, 289-90 (1992). In such instances, a reviewing court need only consider whether the trial court’s ruling as to the validity of the proffered reasons for challenging particular jurors was in error. 
Hudson
, 157 Ill. 2d at 428; 
Mitchell
, 152 Ill. 2d at 289-90. Because a trial court’s finding on the ultimate issue of discrimination rests largely on credibility determinations, it is entitled to great deference on review and will not be set aside unless clearly erroneous. 
People v. Munson
, 171 Ill. 2d 158, 175 (1996); 
Hudson
, 157 Ill. 2d at 428.

In the present case, plaintiff challenged Dr. McPartlin’s peremptory strike of venirepersons Patricia Houk, Richard Craver, and David Knuckles, as well as Dr. Mullin’s peremptory strike of venirepersons Rannal Bankhead and Grant Henderson. The trial court found no 
Batson
 violation.

Preliminarily, we observe that plaintiff does not make any argument before this court as to venireperson Henderson. Any 
Batson
 issue as to this individual is therefore waived. See 177 Ill. 2d R. 341(e)(7).

As to venireperson Houk, the trial court found that she was not black, and thus declined to consider plaintiff’s 
Batson 
claim. This court has frequently recognized that the trial court is in the best position to observe the demeanor of potential jurors. 
E.g.
, 
People v. Williams
, 173 Ill. 2d 48, 67 (1996); 
People v. Fair
, 159 Ill. 2d 51, 74 (1994); 
Mitchell
, 152 Ill. 2d at 296. We likewise recognize that the trial court is in the best position to determine whether a potential juror is a member of the racial group which is purportedly the target of a party’s peremptory strikes. Accordingly, we find no reason to reject the trial court’s finding as to Houk.

With respect to the remaining three venirepersons, the record reveals that the trial court ruled, in each instance, on the ultimate issue of purposeful discrimination. Accordingly, the issue of whether plaintiff made out a 
prima facie
 case is moot, and we limit our review to a determination of whether the trial court’s finding of no purposeful discrimination was clearly erroneous. See
 Hudson
, 157 Ill. 2d at 428; 
Mitchell
, 152 Ill. 2d at 289-90.

Richard Craver

The record reveals that Dr. McPartlin’s counsel excused venireperson Craver based primarily on Craver’s courtroom demeanor, 
i.e.
, “the way that he looked, where he looked and how he answered some of the questions.” Counsel also described an incident during 
voir dire
 in which, while counsel questioned another panel of jurors, Craver muttered something to another juror, prompting counsel to turn his attention back to Craver. Counsel described this as an “embarrassing moment,” and expressed his concern that he may have offended Craver. The trial court recalled this incident, stating, “Well, I remember this kind of notably. I remember [Craver] like leaning over and saying something at a time when no one else was.” The trial court also later recalled Craver’s hesitancy in answering counsel’s follow-up query during the incident.

A prospective juror’s courtroom demeanor may constitute a legitimate and race-neutral reason for excluding that individual. 
People v. Andrews
, 155 Ill. 2d 286, 303 (1993); 
People v. Young
, 128 Ill. 2d 1, 20 (1989). Because such a subjective explanation for exercising a peremptory strike lends itself to pretext, such an explanation must be closely scrutinized. 
People v. Williams
, 164 Ill. 2d 1, 19 (1994). The record indicates that the trial judge appropriately scrutinized counsel’s explanation. The trial judge’s determination as to counsel’s credibility is entitled to great deference. See
 Munson
, 171 Ill. 2d at 175; 
Hudson
, 157 Ill. 2d at 428. We cannot say, therefore, that the trial judge’s ruling was clearly erroneous. See 
Young
, 128 Ill. 2d at 21 (concluding that the trial judge’s finding that the prosecutor’s concern was an “honest one” was not clearly erroneous).

David Knuckles

Dr. McPartlin’s counsel explained that he excused venireperson Knuckles based on a negative experience Knuckles had had with the medical profession in connection with his mother’s death a few years earlier. Knuckles described his mother’s doctor as “one of those diet quacks.” Knuckles had a “negative feeling” after her sudden death, and believed that the doctor could have done some things differently. He explained that “[i]t was a case where you would think because she’s going to the doctor everything was fine, then you get sick and die.” When asked by Dr. McPartlin’s counsel whether, despite this experience, he could be fair in this particular case, Knuckles responded, “After being here I can say, yes, maybe. Before I came in the room, no. But after the Judge and hearing everything I could say yes.”

An equivocal statement by a veniremember as to the ability to be fair and impartial may constitute a race-neutral reason for the exercise of a peremptory challenge. See 
People v. Wiley
, 165 Ill. 2d 259, 282 (1995). In light of Knuckles’ equivocal representation as to his ability to be fair, the trial court’s finding that counsel’s challenge of Knuckles was not racially motivated was not clearly erroneous.

Rannal Bankhead

The record indicates that Dr. Mullin’s counsel excused venireperson Bankhead because Bankhead seemed “overtly hostile” to Dr. McPartlin’s counsel. The trial court “absolutely” agreed, stating that Bankhead’s manner of answering questions indicated he was “real angry” and “hostile.”

The very procedures governing peremptory challenges are designed to afford both parties a fair opportunity to detect bias or hostility on the part of prospective jurors. See 
People v. Moss
, 108 Ill. 2d 270, 276 (1985). Accordingly, a venireperson’s demeanor which evinces a hostile attitude may constitute a legitimate race-neutral reason for excluding that individual. 
Munson
, 171 Ill. 2d at 179-82; 
People v. Taylor
, 171 Ill. App. 3d 261, 267-69 (1988). Further, confirmation in the record that the trial court observed the same demeanor as the challenger lends credence to a purported race-neutral explanation. 
Munson
, 172 Ill. 2d at 182. We find, therefore, that the trial court’s ruling that counsel’s proffered reason for excluding Bankhead was race-neutral was not clearly erroneous.

III. Evidentiary Errors

Plaintiff also argues that she was unfairly prejudiced at trial by (1) improper evidence and argument by defendants as to contributory negligence and mitigation of damages; (2) improper restriction of plaintiff’s cross-examination of Dr. McPartlin; (3) defendant’s violation of a motion 
in limine
 barring evidence of the prior trial in this matter; (4) improper use of leading questions in the examination of Dr. McPartlin by his own counsel; and (5) the cumulative effect of the foregoing errors. We consider each claimed error in turn.

Contributory Negligence and Mitigation of Damages

Plaintiff argues that the trial court erred in allowing defendants to present evidence and argument concerning (i) the refusal by plaintiff, McDonnell, and their daughter, Nula McDonnell, to consent to hip removal surgery; (ii) the alleged refusal by plaintiff to follow Dr. Mullin’s instructions after the November 8 emergency room visit, and to return to the emergency room on November 9; and (iii) the alleged failure of plaintiff and Nula to allow artificial ventilation of McDonnell on November 11 and 12. Plaintiff argues, generally, that defendants and the trial court failed to distinguish between contributory negligence and mitigation of damages. Plaintiff also argues, more particularly, that a plaintiff has no obligation to mitigate damages by submitting to serious or major surgery. See 
Hall v. Dumitru
, 250 Ill. App. 3d 759 (1993).

Generally, errors at trial relating solely to damages will not be considered on appeal where it is evident that the jury, having found in favor of the defendant as to liability, never reached the question of damages. 
Mulvey v. Illinois Bell Telephone Co.
, 53 Ill. 2d 591, 599 (1973). An exception exists where errors which go to the question of damages are “so pervasive and prejudicial as to create the likelihood that they may have affected a jury’s decision on the issue of liability.” 
Mulvey
, 53 Ill. 2d at 599-600.

In the instant case, plaintiff brought a wrongful death claim and a survival claim. Plaintiff brought the wrongful death claim on behalf of herself and the McDonnells’ three adult children–Anne Dougherty, Nula McDonnell, and Richard McDonnell. Under the Wrongful Death Act, the contributory negligence of one or more of the beneficiaries on whose behalf the action is brought is not a defense. Rather, any damages awarded “shall not include any compensation with reference to the pecuniary injuries resulting from such death, to such contributorily negligent person,” who shall not share in the award. Ill. Rev. Stat. 1987, ch. 70, pars. 1, 2. Consistent with the Wrongful Death Act, the jury was instructed that the contributory negligence of plaintiff or Nula barred recovery by that individual or individuals, but that those individuals who were not contributorily negligent may be awarded their pecuniary damages.

Plaintiff brought the survival claim on behalf of McDonnell’s estate for personal injuries suffered by McDonnell. See Ill. Rev. Stat. 1987, ch. 110½, par. 27–6. As to this claim, the jury was instructed that a patient’s failure to exercise ordinary care in obtaining treatment or in following reasonable medical advice does not absolve the physician’s negligence; it only absolves the physician from damages caused by the patient’s failure to exercise ordinary care. See IPI Civil 3d No. 105.08.

Based on the foregoing, it is clear that the evidence and argument of which plaintiff complains went only to the question of damages. The jury, however, found in favor of the defendants as to liability, and thus never reached the question of damages. We need not, therefore, consider whether the trial court erred in permitting such evidence and argument. See 
Mulvey
, 53 Ill. 2d at 599. Assuming, however, that the trial court erred, this is not a case where such error is so pervasive as to affect the jury’s decision as to liability. The record reveals that the jury heard argument and testimony over a period of four weeks. In addition to the testimony of the parties, the jury heard testimony from no less than 12 medical professionals, including four orthopedic surgeons, four internists, one nephrologist, one emergency medicine specialist, one geriatric specialist, and one emergency room nurse. The transcripts consume over 3,000 pages. Of this voluminous record, only a slight portion involves evidence as to contributory negligence and mitigation of damages. The defendants’ closing arguments reflect the lack of emphasis on these issues. In closing, Dr. Mullin’s counsel touched on these issues twice, and then only briefly. Similarly, the coverage afforded these issues by Dr. McPartlin’s counsel is small, in relation to counsel’s argument as a whole. Given the length of this trial and the sheer volume of evidence placed before the jury, the relatively small amount of evidence and argument as to contributory negligence and mitigation of damages was not pervasive at all, much less so pervasive as to affect the jury’s decision on liability.

Cross-Examination of Dr. McPartlin

Plaintiff argues that the trial court improperly restricted her cross-examination of Dr. McPartlin. Dr. McPartlin testified that, during his treatment of McDonnell in 1986, he relied on the “Bone sepsis criteria.” Plaintiff attempted to impeach Dr. McPartlin with an article purportedly establishing that the Bone sepsis criteria were first published in 1992. Defendants objected to the use of the article because it had not been disclosed in discovery. The trial court sustained the objection and struck any testimony regarding the date of the Bone article.

The scope of cross-examination rests within the discretion of the trial court and will not be disturbed on review absent a clear abuse of that discretion resulting in manifest prejudice to the party claiming error. 
Leonardi
, 168 Ill. 2d at 102; 
People v. Kitchen
, 159 Ill. 2d 1, 37 (1994). One purpose of cross-examination is to test the credibility of the witness. 
Kitchen
, 159 Ill. 2d at 37. Assuming, 
arguendo
, that the trial court erred in preventing plaintiff from testing Dr. McPartlin’s credibility as to his reliance on the Bone criteria in 1986, we conclude that plaintiff’s planned impeachment of Dr. McPartlin was not significant enough to affect the outcome of the trial.

Dr. McPartlin testified over a period of several days, explaining in great detail the significance of each symptom, laboratory value, and test result reflected in the records from McDonnell’s hospitalization, as well as the medical bases underlying his treatment decisions. The doctor’s purported reliance on the Bone sepsis criteria constitutes one very small part of his testimony. Further, we note that the limited testimony that was taken on this subject suggests that the criteria may have existed in some fashion prior to their purported publication under Bone’s name in 1992. We also observe that the significance of whether Dr. McPartlin, in fact, could have relied upon the Bone criteria in 1986 is diminished by the testimony of plaintiff’s expert, Dr. Gump, who acknowledged that McDonnell did not satisfy the criteria until November 12. Thus, to the extent the trial court abused its discretion by restricting plaintiff’s cross-examination of Dr. McPartlin, no manifest prejudice resulted to plaintiff.

Motion in Limine

Plaintiff next argues that the trial court erred in denying her motion for a mistrial made after a defense witness referred to the prior trial of this matter, in violation of the court’s 
in limine
 order. The remark of which plaintiff complains occurred during cross-examination of Dr. Jack Franaszek, one of Dr. Mullin’s expert witnesses. When asked how many hours Dr. Franaszek devoted to this case, the doctor answered, “I remember billing approximately $4,000 in this case through 
the trial of last year
.” (Emphasis added.) The trial court, after discussing the matter with counsel, denied plaintiff’s motion for a mistrial and took a short recess. Questioning of Dr. Franaszek then resumed. After closing arguments, the trial court instructed the jury that it may not consider any testimony that may have suggested there was a previous trial.

A trial court is vested with broad discretion to determine the propriety of declaring a mistrial. Where the alleged error, however, did not prejudice the complaining party, or otherwise impair that party’s right to a fair trial, no mistrial will be declared. 
People v. Jones
, 123 Ill. 2d 387, 410 (1988). Error that occurs through the violation of a motion 
in limine
 is subject to the same analysis, 
i.e.
, such a violation will be deemed an appropriate ground for mistrial only where the violation resulted in the denial of a fair trial. See 
Kutchins v. Berg
, 264 Ill. App. 3d 926, 930 (1994); 
Northern Trust Bank v. Carl
, 200 Ill. App. 3d 773, 778 (1990).

It is undisputed that Dr. Franaszek’s testimony violated the court’s 
in limine
 order. At issue is whether the trial court abused its discretion in denying plaintiff’s motion for a mistrial based on such violation. We conclude that no abuse of discretion occurred.

Dr. Franaszek’s reference to the prior trial was brief, devoid of any specifics, and occurred during the course of lengthy and complex proceedings. To the extent any prejudice resulted, it was cured by the court’s instruction to the jury to disregard such testimony. See 
Jones
, 123 Ill. 2d at 408-10 (holding that a motion for mistrial was properly denied where the witness’s improper reference to the “last trial” did not disclose the parties or the outcome of the earlier proceeding and where the trial court admonished the jury to disregard the witness’s answer). The jury is presumed to have followed the court’s instruction to disregard this testimony. See 
People v. Taylor
, 166 Ill. 2d 414, 438 (1995).

Leading Questions

Plaintiff argues that the trial court erred in allowing Dr. McPartlin’s counsel to ask leading questions of his client. Although we agree that error occurred, we find any error was harmless.

Plaintiff called Dr. McPartlin as an adverse witness, and appropriately questioned the doctor as if under cross-examination. See 735 ILCS 5/2–1102 (West 1998). Subsequent questioning of Dr. McPartlin by his own counsel should have been conducted as a redirect examination. See M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §607.4, at 417-18 (7th ed. 1999). Over plaintiff’s objection, however, the trial court allowed Dr. McPartlin’s counsel to ask his client leading questions, as if conducting cross-examination. Upon later realizing its error, the trial court instructed the jury that plaintiff’s counsel “was correct in his objection to leading questions.” Significantly, plaintiff’s counsel agreed to the curative instruction because it removed from the jurors’ minds the idea that he had done something wrong by objecting. Further, a review of Dr. McPartlin’s testimony reveals that not all of the questions asked by his counsel were leading, and many of the questions that were leading related to preliminary or inconsequential matters. Under the circumstances, any error is harmless.

Cumulative Error

Finally, plaintiff argues that the cumulative effect of the foregoing errors was highly prejudicial. We disagree. As discussed above, none of the errors alleged require reversal in this case. Looking at the matters cumulatively, the record reveals that the trial, taken as a whole, was fair. Thus, plaintiff is not entitled to a new trial on this basis. See 
Lawson v. G.D. Searle & Co.
, 64 Ill. 2d 543, 558-59 (1976) (recognizing that minor improprieties during a lengthy, complex and difficult trial do not warrant reversal where the trial as a whole was fair).

CONCLUSION

For the foregoing reasons, we find that the jury was properly instructed as to defendants’ sole proximate cause defense; that no 
Batson
 violation occurred; and that any evidentiary errors at trial were harmless. Accordingly, we affirm the judgment of the appellate court, affirming the judgment of the circuit court in favor of defendants.

Affirmed.