2018 IL App (1st) 172329

FIRST DIVISION
October 29, 2018

No. 1-17-2329

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| RICHARD FRULLA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 12 L 1381 |
| | ) | |
| HYATT CORPORATION d/b/a HYATT REGENCY | ) | |
| CHICAGO and CHAMPION EXPOSITION | ) | |
| SERVICES, | ) | The Honorable |
| | ) | James McCarthy, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE PIERCE delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Griffin concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Richard Frulla sued defendants Hyatt Corporation d/b/a Hyatt Regency Chicago

(Hyatt) and Champion Exposition Services (Champion) (collectively, defendants) in the circuit

court of Cook County to recover damages for injuries plaintiff allegedly sustained to his back. A

jury returned a verdict in favor of defendants and found plaintiff 100% at fault for his injuries.

The circuit court denied plaintiff's posttrial motion for a new trial. Plaintiff appeals, arguing that

his motion for new trial should have been granted because the circuit court erred by (1) failing to

bar defendants' expert witnesses for noncompliance with Illinois Supreme Court Rule 218(c)

(eff. July 1, 2014), (2) failing to bar one of defendants' experts because he was improperly disclosed as an independent expert witness and his testimony was cumulative, (3) admitting evidence of plaintiff's prior health and injuries that were not at issue in this case, and (4) admitting evidence in violation of the collateral source rule and a motion *in limine*.

¶ 2    Defendants address the merits of plaintiff's arguments, but first contend that plaintiff's appeal is moot, since all of his arguments pertain to the issue of damages. Defendants argue that the jury found in favor of defendants and against plaintiff on the issue of liability because the jury found plaintiff 100% at fault for his own injuries. We conclude that all of plaintiff's arguments on appeal are moot, except one: whether the circuit court should have barred defendants' mechanical engineering expert—who offered opinions on liability—for defendants' failure to comply with Rule 218(c). For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4    Plaintiff initiated this action in February 2012, and proceeded to a jury trial on his two-count first amended complaint.[1] Plaintiff alleged that on February 13, 2010, he was working at a trade show at the Hyatt Regency Hotel in Chicago. He alleged that the floor around certain booths at the trade show was covered with carpet, "which had missing floor tiles underneath that caused [p]laintiff to fall and sustain injuries." Count I alleged that Hyatt owned and operated the premises; created an unreasonably dangerous condition on the trade show floor by allowing carpet to be placed over missing floor tiles; failed to maintain the area in and around the booths; failed to inspect the floor when it knew or reasonably should have known that an inspection was necessary; failed to warn plaintiff of the missing floor tiles when it knew or should have known

---

[1]Plaintiff filed a second amended complaint on the same day that the jury returned its verdict in favor of defendants. The allegations in the second amended complaint are substantially similar to the allegations in the first amended complaint.

that it posed an unreasonably dangerous condition to plaintiff; failed to keep the premises safe; and was otherwise negligent in the ownership, maintenance, and management of the premises.

¶ 5    Count II alleged that Champion was in charge of deconstruction of the trade show booths and created an unreasonably dangerous condition on the trade show floor; negligently operated forklifts on the trade show floor; failed to ensure its employees were properly trained; failed to maintain the area in and around the booths; failed to inspect the floor when it knew or reasonably should have known that an inspection was necessary; failed to warn plaintiff of the missing floor tiles when it knew or should have known that it posed an unreasonably dangerous condition to plaintiff; failed to keep the premises safe; and was otherwise negligent in the ownership, maintenance, and management of the premises.

¶ 6    Defendants filed answers to the complaint,[2] the parties engaged in discovery, and the circuit court set an initial trial date of May 2, 2016. Plaintiff was originally ordered to disclose all of his retained expert witnesses by February 2, 2016. However, the parties filed a joint motion to continue the trial, which the circuit court granted, and the trial was rescheduled for October 2016. In March 2016, the circuit court ordered plaintiff to disclose all of his Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2007) retained expert witnesses by April 25, 2016. On May 2, 2016, plaintiff served defendants with a supplemental interrogatory answer disclosing three expert witnesses and two previously undisclosed treating physicians. In light of plaintiff's supplemental disclosures, the parties again filed a joint motion to continue the trial date, which the circuit court again granted, and the trial was rescheduled for March 3, 2017. The circuit court did not set a date for defendants to disclose any Rule 213(f)(3) witnesses.

---

[2]Additionally, defendants filed separate third-party complaints for contribution against plaintiff's employer, Renaissance Management, Inc. (Renaissance), and against United Maintenance Company, Inc. (United), which provided janitorial services at the premises. United filed cross-claims against Renaissance. All of these claims were part of the jury trial, but none of the third-party claims are at issue in this appeal.

¶ 7    In November 2016, plaintiff filed a motion for leave to amend his Rule 213(f)(3) disclosures to add an additional expert witness. The circuit court granted plaintiff's motion over defendants' objection and ordered plaintiff to serve his supplemental disclosures by November 21, 2016. The circuit court further ordered that it would "set a [Rule] 213(f)(3) schedule for [defendants] on [January 5, 2017]." The circuit court's order does not reflect any objection to the deadline for defendants' disclosures. Plaintiff served his supplemental disclosures December 6, 2016, two weeks after the circuit court's deadline.

¶ 8    On January 5, 2017, the circuit court ordered defendants to serve Rule 213(f)(3) disclosures by January 20, 2017. Plaintiff objected on the basis that he had not waived the requirement that discovery be completed not later than 60 days prior to trial under Rule 218(c). See Ill. S. Ct. R. 218(c). Defendants served their initial Rule 213(f)(3) disclosures on January 20, 2017, although one of the expert reports was not attached. The circuit court granted defendants leave to file the missing report as an amended disclosure on January 23, 2017. Plaintiff deposed only one of defendants' disclosed experts on the limited issue of bias. None of the parties filed a motion to alter the March 3, 2017, trial date.

¶ 9    Relevant to this appeal, plaintiff filed three pretrial motions *in limine*. Plaintiff's motion *in limine* no. 5 sought to bar all of defendants' Rule 213(f)(3) witnesses from testifying for failure to comply with Rule 218(c). He argued that the circuit court ordered defendants to make expert disclosures by January 20, 2017, which was only 42 days before the scheduled trial date, and that defendants failed to completely disclose all Rule 213(f)(3) experts until January 23, 2017. After hearing argument from the parties, the circuit court denied plaintiff's motion to bar defendants' experts from testifying.

4

¶ 10    Plaintiff's motion *in limine* no. 3[3] sought to bar the testimony of Avi Bernstein, M.D., an orthopedic physician disclosed by defendants—but not by the third-party defendant Renaissance—as a Rule 213(f)(2) witness who performed two independent medical examinations (IME) of plaintiff as part of plaintiff's workers' compensation case against Renaissance. Alternatively, plaintiff sought to bar Wellington Hsu, M.D., an orthopedic surgeon disclosed by defendants as a Rule 213(f)(3) witness. Plaintiff argued that Bernstein and Hsu reviewed the same medical records and that Hsu adopted and agreed with Bernstein's opinions after he reviewed Bernstein's report and deposition. Plaintiff contended that Bernstein's and Hsu's testimony would be cumulative because they both expressed the same opinion based on the same medical records and specialized in the same area of medicine. At the hearing on the motion *in limine*, plaintiff only argued that Bernstein should be barred from testifying. In response, defendants argued that Bernstein had actually examined plaintiff and formed certain opinions while Hsu had not. Defendants argued that Bernstein was not a controlled expert and noted that he had to be subpoenaed to give a deposition, whereas Hsu was an expert retained by defendants. Furthermore, Hsu had reviewed more materials than Bernstein had and the fact that Hsu agreed with Bernstein's opinions did not render either Hsu's or Bernstein's testimony cumulative. After hearing argument from the parties, the circuit court denied plaintiff's motion to bar Bernstein from testifying.

¶ 11    Finally, plaintiff's motion *in limine* no. 6 sought to bar any reference to plaintiff's health or injuries that were not at issue in this case. He argued that none of defendants' expert witnesses offered any opinion that plaintiff's prior injuries were relevant to causation, damages, or any other issue in the case. The motion requested that the circuit court "prohibit[ ] the defendants

_____

[3]The circuit court referred to plaintiff's motion *in limine* no. 3 as "no. 10," but we will continue to refer to it as "no. 3."

from making any reference to plaintiff's health or injuries that occurred prior to this occurrence *** or to any other health concerns plaintiff has had since sustaining his back injury." At the hearing on the motion *in limine*, defendants argued that Hsu and Thomas Grezak, a vocational rehabilitation specialist disclosed by defendants as a Rule 213(f)(3) witness, offered opinions based in part on plaintiff's monthly prescription of narcotic pain medication, and plaintiff's statement that he was "fine" and had returned to work "full-time with no restrictions" after a 2008 work injury. Defendants argued that the defense should be permitted to introduce evidence that plaintiff's "baseline" of "fine" included several narcotic pain pills per day. The circuit court denied plaintiff's motion *in limine* "as written." The circuit court observed that, absent any testimony that a prior injury contributed to cause a present injury, evidence of prior injury is inadmissible. The circuit court stated,

> "Now the *Voykin* [*v. DeBoer*, 192 Ill. 2d 49 (2000)] Rule says absent medical testimony that says what happened two years ago contributed to cause this injury to the body part. Absent that, prior injury doesn't come in.
>
> However, there's a whole smorgasbord of other sequelae that can flow over to the question of damages. I'm not going to preclude other conditions that could affect or be relevant in the fact-finders deciding the nature and extent of injuries that plaintiff claims. One that comes to mind is loss of normal life. Those could be relevant of what took place before without getting into the body parts that *Voykin* wants to do.
>
> * * *
>
> However, the mere fact that the gentleman had suffered a broken knee, or anything of that nature, there's no reason to get into it.

If he had other limitations beforehand, for whatever reason, it doesn't

matter because the the [*sic*] jury is going to have to compare from the day before

to the day after this event in assessing certain damages that may or may not have

existed.

This [motion] is going to be denied."

¶ 12 Before plaintiff's trial testimony, his counsel asked the circuit court to clarify its ruling

on motion *in limine* no. 6. Counsel stated that one of plaintiff's treating physicians was going to

testify that plaintiff told him that plaintiff had no prior back issues before the injury in this case.

Plaintiff's counsel further stated, "It is, however, true that several years before [plaintiff] had a

car accident and he will testify that that was more upper back issues than lower back issues, but

arguably there were some back issues in 2006, which was four years earlier which he did not

mention" to his treating physician. Counsel stated that Hsu's report mentioned that plaintiff's

injury was a soft tissue back injury that had nothing to do with plaintiff's prior back issues.

Plaintiff's counsel then stated "I think despite *Voykin* if you're going to allow them to talk about

my client's prior back injuries to this incident, then I'd like to have him testify to that up front

right now and he can explain it sort of like I just did to you." After hearing from defense counsel,

the circuit court stated,

"Here is what I said to you before, and I thought I had made it clear.

[Defendants] don't have the expert to say that whatever happened in 2007 is the

cause of this now; however, what did happen in 2007 put [plaintiff] in a certain state of

which he is only off course for six weeks or whatever the case may be. You had pain and

suffering before. There's pain and suffering after. What that baseline is is what

[defendants are] entitled to bring in. [Defendants are] saying he's returned back to what

he is before and they're entitled to show what that level was and it wasn't their responsibility. It's just that simple. [Hsu's] not saying what happened here caused this injury or aggravated it.

As I understand it, Dr. Hsu says there is a soft tissue injury that would have resolved in six weeks and he would have returned to whatever level he was at before. That's all."

¶ 13    At trial, plaintiff gave the following testimony on direct examination. He suffered a serious back injury on February 13, 2010, while he was working at the trade show at the Hyatt. He had no serious back issues prior to that injury. In 2006, he was involved in a car accident and hurt his upper back. He saw a doctor "once or twice" and went to physical therapy "two or three times." He stopped going to physical therapy because "[n]othing was wrong. I was fine." In 2008, he injured his knee and shoulder while working at another trade show. The incident report for that injury mentioned his back, but he did not receive any medical treatment for his back because "it was fine." He did, however, have surgery on his shoulder and knee, and later went to physical therapy. In 2009, he "was coughing for a few weeks and [he] broke a couple of ribs." He sought treatment from a chiropractor and received "e-stim and some massages," but did not receive any treatment for his back. In 2009, he returned to work "100 percent without one restriction, full duty." He did, however, continue to receive pain management for his knee and shoulder and was prescribed pain medications. He never took those medications while at work.

¶ 14    Plaintiff further testified that he did between 15 and 20 shows per year at the Hyatt. Champion was the general contractor for the February 13, 2010, trade show. Champion's employees used forklifts to move freight around the floor. The Hyatt floor had carpet floor tiles that were glued down with adhesive. Plaintiff was aware that forklifts would damage the carpet

floor tiles. The trade show booth that plaintiff was dismantling had a rental carpet placed on top of the existing carpet floor tiles. The booth also had tables with table skirts. There were four bookcases in the booth that were each three feet wide, seven feet tall, and a foot and half deep, each of which weighed between 300 and 400 pounds. Plaintiff was familiar with the bookcases and had previously dismantled and loaded them into crates for storage. Each crate could fit two bookshelves. The crates were placed on the showroom floor tiles just outside of the booth. Plaintiff would take hold of the bookcase and "walk the dog," meaning "you walk, you push, you pull it, you drag it a little." In other words, he would lift one end of the bookcase and move it, and then lift the other end of the bookcase and move it, but would never actually pick up the entire bookcase. He would move the bookcase from the back of the booth to the front of the booth, tilt it onto the lip of the crate, and then let it slide into the crate. He moved three of the bookcases and got them into the crates without incident.

¶ 15   While attempting to put the fourth bookcase into the crate, he lost his footing. He placed his left foot "right on the edge of the carpet, which the table was [*sic*]—the [table] skirt was on the edge of the carpeting." His left foot was partially under the table, "[j]ust enough to be on the top of the carpet. An inch or two, something like that." He said that he "lost [his] footing and wrenched and twisted [his] back." He looked under the table skirt, lifted the rental carpet, and saw "bare concrete" and "some carpet tiles crunched up, crumpled, pushed to the back" and "a big scrape on the floor and few little pieces of wood particles, like splinters." Based on his experience, he believed that a forklift caused the damage to the carpet floor tile. Plaintiff did not seek immediate medical treatment.

¶ 16   On cross-examination, defendants asked plaintiff why the incident report for his injury did not reflect that his foot slipped on a carpet while loading the bookcase into the crate, and why

the notes from his medical appointments reflected that his back injury occurred while moving heavy furniture but did not mention that he slipped on carpet while moving furniture. Plaintiff testified that he believed that he told a supervisor about the condition of the carpet tile on the date of the incident, but did not know for sure. Plaintiff testified that he provided his doctors with the basic information about the incident and would have given more details if the doctors had asked.

¶ 17   The jury heard testimony from numerous witnesses for the plaintiff, including lay witnesses who testified as to the events of February 13, 2010, plaintiff's orthopedic surgeon, and a rehabilitation counselor. Defendants presented testimony from Hsu and Bernstein, as well as two of plaintiff's other treating physicians, a rehabilitation counselor, and a mechanical engineer. After hearing closing arguments, the jury returned a verdict in favor of defendants. The jury found plaintiff 100% at fault for his injuries and defendants 0% at fault.

¶ 18   Plaintiff filed a posttrial motion for new trial, arguing that all of defendants' experts, including the mechanical engineer, Hsu, and Bernstein, should have been barred for noncompliance with Rule 218; that Bernstein should have been barred because his testimony was cumulative and he was not properly disclosed as a Rule 213(f)(3) witness; and that evidence of plaintiff's prior injuries should not have been admitted into evidence. After hearing argument, the circuit court denied plaintiff's motion for a new trial. Plaintiff filed a timely notice of appeal.

¶ 19                                II. ANALYSIS

¶ 20   On appeal, plaintiff does not raise any argument that the jury's verdict, which found him 100% liable for his own injury, was against the manifest weight of the evidence. Instead, plaintiff argues that the circuit court erred by denying his motion for a new trial because defendants' expert witnesses should have been barred for noncompliance with Rule 218(c); Bernstein should

have been barred because he was not properly disclosed as an expert witness and his testimony was cumulative; evidence of plaintiff's prior health and injuries that were not at issue in this case was admitted; and evidence in violation of the collateral source rule and a motion *in limine* was admitted. We will only reverse the circuit court's ruling on a motion for a new trial where the moving party affirmatively shows the circuit court abused its discretion. *Velarde v. Illinois Central R.R. Co.*, 354 Ill. App. 3d 523, 537-38 (2004).

¶ 21    As an initial matter, unrelated to the merits of this appeal, we note that throughout his briefs in this court, plaintiff italicizes, underlines, or places certain phrases, sentences, and passages in bold type, apparently for emphasis, and frequently uses either two or three forms of emphasis simultaneously. For its part, Champion's brief also simultaneously uses bold type and italicizes certain words and phrases for emphasis. Appellate counsel should refrain from this unnecessary practice for the simple reason that a single, uniform method of adding emphasis—preferably through the use of italics—is sufficient.

¶ 22    Defendants argue that this appeal is moot because the jury found plaintiff 100% at fault for his injuries and the only issues raised on appeal relate to damages and the nature and extent of plaintiff's injuries, and that plaintiff has failed to demonstrate that the errors complained of affected the outcome of the trial. In his briefs to this court, plaintiff asserts that one of defendants' allegedly untimely disclosed experts, mechanical engineer Suzanne Alton-Glowiak, offered opinion testimony concerning liability (although plaintiff does not explain the contours of Alton-Glowiak's testimony), and that the circuit court's cumulative errors deprived him of a fair trial. Aside from plaintiff's failure to demonstrate how these "cumulative errors" produced an unfair trial, our supreme court has instructed that a court of review need not reach a plaintiff's appellate arguments related solely to damages where a jury decided the question of liability in

favor of defendants. See *McDonnell v. McPartlin*, 192 Ill. 2d 505, 532 (2000) (stating that where the jury found in favor of the defendants on the issue of liability and thus never reached the question of damages, the court "need not *** consider whether the trial court erred in permitting such evidence and argument.")

¶ 23    Here, defendants disclosed Alton-Glowiak as a Rule 213(f)(3) witness. She testified in part that it was possible that the force of someone's foot could dislodge a floor tile while they were pushing a 300 pound bookcase. This testimony clearly went to issues of liability and could potentially have contributed to the jury's verdict on the issue of liability. Therefore, plaintiff's Rule 218(c) argument as it relates to Alton-Glowiak is not moot, and we will address this argument first.[4]

¶ 24    Plaintiff argues that the circuit court erred by failing to bar defendants' expert witnesses for noncompliance with Supreme Court Rule 218(c). He contends that, with a trial date of March 3, 2017, defendants were under an "affirmative duty" to make their Rule 213(f)(3) disclosures no later than January 3, 2017, and that a failure to disclose pursuant to the "mandatory" provisions of Rule 218(c) warrants a new trial. We disagree.

¶ 25    Illinois Supreme Court Rule 218(c) provides, in relevant part,

> "All dates set for the disclosure of witnesses, including rebuttal witnesses, and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates that trial will commence, unless otherwise agreed by the parties. This rule is to be liberally construed to do substantial justice between and among the parties." Ill. S. Ct. R. 218(c).

---

[4]Furthermore, based on our resolution of this issue, we need not determine whether plaintiff's argument is moot with respect to each of defendants' Rule 213(f)(3) experts individually.

The committee comments for Rule 218 provide, "Paragraph (c) controls the subsequent course of action of the litigation unless modified and should ensure that the disclosure of opinion witnesses and discovery will be completed no later than 60 days before the date on which the matter is set for trial." Ill. S. Ct. R. 218, Committee Comments (rev. Jun. 1, 1995). We have previously held that, " 'if a trial court does not set deadlines for disclosure of expert witnesses, such disclosure must occur in time to enable discovery concerning the witnesses to be completed at least 60 days prior to trial.' " *Paquet v. Steiner*, 239 Ill. App. 3d 866, 869 (1993) (quoting *In re Marriage of Gorisch*, 208 Ill. App. 3d 852, 856 (1991)). Here, in November 2016, plaintiff was given leave to file amended expert disclosures on November 21, 2016, over defendants' objection, and the circuit court simultaneously set a January 5, 2017, court date at which it would set a schedule for defendants' expert disclosures, without any objection from the plaintiff. Thus, it was clear in November 2016 that defendants would be making expert disclosures on a date that was less than 60 days before trial, and plaintiff stood mute.

¶ 26    Furthermore, disclosure of an expert within 60 days of trial does not mean the circuit court must automatically bar the witness. *Hartman v. Pittsburgh Corning Corp.*, 261 Ill App 3d 706, 719 (1994); see also *City of Chicago v. Eychaner*, 2015 IL App (1st) 131833, ¶ 98 (same); see also *Gee v. Treece*, 365 Ill. App. 3d 1029, 1038 (2006) (finding that, given the particular facts of that case, the circuit court properly exercised its discretion by denying a motion to bar an expert witness disclosed 48 days prior to trial). "[T]he imposition of sanctions for a violation of discovery rules has always been, and still remains, a matter largely within the sound discretion of the trial court." (Internal quotation marks omitted.) *Hartman*, 261 Ill App 3d at 719. The circuit court's decision with respect to discovery matters will not be overturned absent an abuse of discretion. *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 126. The circuit court abuses its

discretion only if it acts arbitrarily without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law, or if no reasonable person would take the position adopted by the circuit court. *Schmitz v. Binette*, 368 Ill. App. 3d 447, 452 (2006).

¶ 27    Here, we cannot say that the circuit court abused its discretion. It is plain that the circuit court permitted disclosure of defendants' Rule 213(f)(3) witnesses less than 60 days prior to trial, and thus did not strictly adhere to Rule 218(c). But Rule 218(c) provides that it should be liberally construed to do substantial justice. We have held that the circuit court has the discretion to set an expert disclosure schedule and we have held that Rule 218(c) does not automatically require the circuit court to bar a witness disclosed within 60 days prior to trial. *Hartman*, 261 Ill App. 3d at 719. Instead, we must consider whether the circuit court abused its discretion in setting that schedule and refusing, shortly before trial, to bar defendants' experts as a discovery sanction for noncompliance with Rule 218(c). Here, the circuit court twice rescheduled the trial date due to the late filing of plaintiff's own supplemental disclosures. In November 2016, plaintiff filed a motion for leave to amend his Rule 213(f)(3) disclosures to add an additional expert witness, which the circuit court allowed over defendants' objection. Despite being ordered to serve his supplemental disclosures by November 21, 2016, plaintiff failed to do so until December 6, 2016. Furthermore, in the same order granting plaintiff an extension of time to serve his supplemental disclosures, the circuit court ordered that it would "set a [Rule] 213(f)(3) schedule for [defendants] on [January 5, 2017]." Plaintiff therefore had notice in November 2016 that the circuit court was exercising its discretion over the discovery schedule and that defendants' disclosures would be made within 60 days of trial.

14

¶ 28    Plaintiff was dilatory in making his own disclosures, which ordinarily would delay defendants' completion of its discovery of plaintiff's experts. Thereafter, defendants' experts typically would need time to review the discovery from plaintiff's experts in order to formulate their opinions and prepare their reports. These sorts of delays are some of the reasons why the circuit court has discretion to alter discovery schedules in order to avoid surprise and achieve fairness between the parties. At the very least, if plaintiff was prejudiced by this schedule, he should have advised the circuit court of the reasons why he was prejudiced at the earliest time practical before trial so that the circuit court could assess the situation and rule accordingly. A party cannot sit back and sandbag his opponent where he has had ample opportunity to bring to the circuit court's attention a discovery issue that could reasonably be resolved in fairness to all litigants. We also note that plaintiff only deposed Hsu on the limited issue of bias and, if the decision to not depose the other disclosed defense experts was based on a belief that defendants' experts would be barred with a favorable ruling on his motion *in limine*, that was a gamble that plaintiff lost. Under these circumstances, we cannot say that the circuit court abused its discretion by altering the disclosure schedule to allow defendants to disclose experts less than 60 days before trial in order to do substantial justice between the parties.

¶ 29    It is clear that plaintiff is attempting to enforce the letter of Rule 218(c) to his advantage without regard to its stated purpose while ignoring his own counsel's lack of diligence in providing discovery disclosures to defendants' counsel. To accept plaintiff's argument, absent any credible showing of prejudice or unfairness, would allow a party receiving expert disclosures less than 60 days before trial to remain silent, raise an unsuccessful objection to the timeliness of the disclosure shortly before trial, and obtain a new trial in the event of an adverse verdict. See *Linn v. Damilano*, 303 Ill. App. 3d 600, 606 (1999) (observing that "unless the plaintiff can

15

establish some prejudice arising from the alleged error, the judgment need not be reversed on appeal" and that "mere disappointment *** is not prejudice."). This sort of tactical gamesmanship is heavily discouraged by our courts and is an example of why discovery rules are drafted to reflect notions of fairness and substantial justice. The circuit court was under no obligation to automatically bar defendants' experts, but instead properly exercised its discretion to ensure substantial justice between the parties by allowing the parties to litigate the merits of their respective positions. *Hartman*, 261 Ill App 3d at 719; *Eychaner*, 2015 IL App (1st) 131833, ¶ 98; *Gee*, 365 Ill. App. 3d at 1038. Based on the record before us, where plaintiff's counsel delayed providing required expert disclosures resulting in less time for opposing counsel to complete its discovery of plaintiff's experts and then comply with its own expert disclosures, we cannot say that the circuit court abused that discretion by refusing to bar defendants' experts from testifying at trial. Therefore the circuit court did not abuse its discretion in denying plaintiff's motion for a new trial on this basis.

¶ 30    Because the jury found that plaintiff was 100% at fault, we need not address the remainder of plaintiff's arguments on appeal that relate to defense testimony relevant to the extent of damages incurred by plaintiff, namely that Bernstein was improperly disclosed as a Rule 213(f)(2) witness, that Bernstein's testimony was cumulative, that the circuit court improperly admitted evidence of plaintiff's prior health and injuries, and that Bernstein offered testimony that violated the collateral source rule and a pretrial ruling on a motion *in limine*. These alleged errors relate to testimony directed to the issue of damages and do not relate to the issue of liability. Plaintiff has failed to show how these perceived errors caused the jury to find him to be the 100% cause of his own injury. No citation is necessary for the proposition that no damages can be assessed where no liability is found. It is clear that the jury in this case never

reached the issue of plaintiff's damages and, under these circumstances, even if the alleged errors occurred, we would not award plaintiff a new trial. *McDonnell*, 192 Ill. 2d at 532 (stating that where the jury found in favor of the defendants on the issue of liability and thus never reached the question of damages, the court "need not *** consider whether the trial court erred in permitting such evidence and argument.").

¶ 31                                    III. CONCLUSION

¶ 32    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 33    Affirmed.